**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| JEROME PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:09-cv-1051-TWP-MJD |
| | ) | |
| OFFICER MATTHEW THOMAS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### Order on Motion for Summary Judgment

Plaintiff Jerome Perry ("Perry") is the plaintiff in this civil rights action. Officers Matthew Thomas and Christopher White (collectively "the Officers") of the Indianapolis Metropolitan Police Department ("IMPD") are the defendants, as is the IMPD itself. Perry claims that the defendants inflicted injuries on him and violated his rights while handcuffing him after entering his home without a warrant or other legal justification. The defendants seek resolution of all claims through summary judgment. For reasons explained below, the defendants' motion for summary judgment is **granted in part and denied in part.**

### I. Summary Judgment Standard

"As stated by the Supreme Court, summary judgment is not a disfavored procedural shortcut, but rather is an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1103 (7th Cir. 2008) (citations omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed.R.Civ.P.** 56(a). A fact is material if it might affect the outcome of the suit under the governing law, and a dispute about a material fact is genuine only if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When the moving party has met the standard of Rule 56, summary judgment is mandatory. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

"In evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. The mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment. Only factual

disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney,* 526 F.3d at 1104 (internal citations omitted). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied,* 519 U.S. 1115 (1997).

## II. Material Facts

The court finds the following facts are not genuinely in dispute. These facts shall be treated as established in this action pursuant to *Federal Rules of Civil Procedure* 56(g).

1. On June 21, 2008, Perry contacted police to report that he had been assaulted by Charlie Esco. As a result of the confrontation with Charlie Esco, Perry suffered injuries, including an injury to his nose. Also, during this altercation, Perry and Charlie Esco ended upon the ground. Photographs of Perry's injuries on June 21, 2008, were taken at the scene of the altercation. Perry admits he suffers from a sinus condition, has had plastic surgery on his nose, and has scarring on his nose.

2. On August 22, 2008, Officers White and Thomas approached Perry's home to assist Sarah Wilken with Child Protective Services ("CPS") in removing a child from Perry's home. Officers Thomas and White were advised by Sarah Wilken that she had been "ordered to remove three small children from the residence." Ms. Wilken advised the Officers that the children had been involved in an incident where the father of the youngest child, Charlie Esco, pointed a firearm at someone with the children in the vehicle. Officer Thomas asked Ms. Wilken if there were any weapons in the home, and Ms. Wilken advised the Officers that she did not know, but that Perry was known to carry a handgun.

3. On August 22, 2008, Perry was at his residence located at 1913 W. 65th Street in Indianapolis, Indiana. He was babysitting his three grandchildren and playing with them. There was no one else inside the residence and the house was quiet. At approximately 2:15 p.m., Perry answered his front door and was confronted by Officers Thomas and White. The Officers entered Perry's home and did not provide Perry with any legal authority for why they were there.

4. Perry was handcuffed and then after the children were secured the Officers released Perry from the handcuffs and left the scene.

5. On August 22, 2008, following the removal of the children from Perry's home, Perry went to the hospital. Perry was treated for left shoulder and arm pain and for an abrasion on his nose. Perry was diagnosed with shoulder strain and given a sling for comfort and instructed on exercises to do.

6. Perry later went to OrthoIndy for treatment of left shoulder pain. He was diagnosed with a rotator cuff tear. Perry had arthroscopic rotator cuff surgery on October 18, 2008, and had two follow up appointments at OrthoIndy on October 29, 2008, and December 9, 2008.

7. On August 25, 2008, the Marion County Department of Children Services filed a Motion for Authorization for Foster Care Placement Due to Emergency Removal from Temporary In-Home Trial Visit. This motion was granted by the Marion Superior Court, Juvenile Division.

8. The IMPD received two tort claim notices from Perry regarding the August 22, 2008, incident. The first such notice, dated January 16, 2009, and received by the IMPD on January 21, 2009, states that on "August 22, 2008, officers of the Indianapolis Metropolitan Police Department were executing a warrant to remove children from Mr. Perry's home." This notice goes on to state that during the encounter, Perry "wrenched his shoulder, causing a rotator cuff tear." The City of Indianapolis received a second tort claim notice, dated January 21, 2009, stating that Perry was "babysitting his grandchildren . . . on August 22, 2008 when officers of the of the [sic] Indianapolis Metropolitan Police Department arrived accompanying Sarah Wilkins, a representative of Child Protective Services, arrived [sic] to take the children into State custody due to an incident involving the father of one of the children." This notice goes on to state that Perry's encounter with the Officers "injured the back" of Perry.

### III. Disputed Facts

Many facets of the interaction between the Officers and Perry on August 22, 2008, are disputed. Specifically, the defendants provide evidence that after making contact with Perry, the Officers, as well as Ms. Wilken, observed Perry become agitated. Officer Thomas noticed a large bulge in each of Perry's front pants pockets and attempted to perform a pat-down search for everyone's safety. Perry did not allow the pat-down to be conducted and the Officers were forced to subdue Perry with handcuffs.

Perry disputes the defendants' version of events, and instead states under oath: When the Officers entered his home one of them struck Perry with a punch and knocked him backwards onto the floor near the couch. The Officers pulled Perry's arms behind his back and handcuffed him. The Officers then picked Perry up and threw him on the couch by pulling Perry's arms violently behind his back. The Officers put a knee in Perry's back and pulled his arms back further. The Officers struck Perry in the head and on his shoulders while he was handcuffed. The Officers then pulled Perry up from the couch and placed him upright. Perry did not resist the Officers in any fashion and he was not agitated. When asked, Perry told the Officers that he was not carrying a handgun. Perry asked the Officers if he was under arrest and what the charges were against him. One of the Officers responded by stating "we don't have to put up with your shit" and stated that they would ask the questions. Perry was injured and incurred medical bills totaling $13,960.93 as a result of this incident.

## IV. Discussion

**A. Claims Brought Pursuant to 42 U.S.C. § 1983**

Count I of the complaint alleges that on August 22, 2008, Officers Thomas and White entered Perry's home without a warrant or legal justification for doing so and while there handcuffed and struck Perry causing injuries. Count I is brought pursuant to 42 U.S.C. § 1983, against the Officers in their individual capacities only.[1]

Section 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw,* 512 U.S. 107, 132 (1994). In a § 1983 case, the plaintiff bears the burden of proof on the constitutional deprivation that underlies the claim, and must present sufficient evidence to create genuine issues of material fact to avoid summary judgment. *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

   1. Qualified Immunity

First the defendants seek dismissal of the claims brought pursuant to § 1983 on the basis that the Officers are entitled to qualified immunity.

Government officials "are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The issue of qualified immunity is a question of law for the court, but issues of fact relevant to determining whether qualified immunity applies are questions for the jury. *Williams v. Pollard*, 44 F.3d 433, 434-35 (6th Cir.1995). Summary judgment is not appropriate if there is a genuine factual dispute relating to whether the defendant committed acts that allegedly violated clearly established rights. *Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996).

In this case, the Officers' qualified immunity defense is **rejected,** not based on the determination that they are not entitled to qualified immunity as a matter of law, but on the existence of one or more disputed issues of material fact that preclude entry of summary judgment.

---

[1] Perry specifically states that he is not making a *Monell* claim. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

4

2. Fourth Amendment

The defendants argue that they acted reasonably when they entered Perry's home and restrained him and thus no violation of Perry's Fourth Amendment rights occurred.

The Fourth Amendment provides: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." "All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment and its 'reasonableness' standard." *Sow v. Fortville Police Dept.*, 2011 WL 477050, *7 (7th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

If Perry's version of the disputed facts is accepted, the Officers' actions were not reasonable and violated Perry's Fourth Amendment rights. Accordingly, the motion for summary judgment is **denied** as to the Fourth Amendment claim.

3. Fourteenth Amendment

The motion for summary judgment is **granted** as to the Fourteenth Amendment claim, however, because no due process right is implicated by Perry's claims. See *Fox v. Hayes,* 600 F.3d 819, 841 (7th Cir. 2010) (citing *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

**B. Indiana Tort Claims Act**

In Count II of the complaint, Perry claims that the Officers illegally entered Perry's home and committed a battery on him. Perry alleges that the IMPD was directly and legally responsible for the actions of the Officers and states that the claims against the Officers are brought against them in their individual and official capacities. The defendants allege that Perry's state law battery claims are barred by the Indiana Tort Claims Act ("ITCA").

1. IMPD the City of Indianapolis

The IMPD is not a suable entity and thus not a proper party in this action. *See Susanowiz v. Town of Hamilton*, 2011 WL 65777 (N.D.Ind. Jan. 10, 2011). The Seventh Circuit recently explained:

> The United States Supreme Court has instructed that local government liability under § 1983 "is dependent on an analysis of state law." *McMillian v. Monroe County*, 520 U.S. 781, 786 (1997). Under Indiana law, a "[m]unicipal corporation" is a "unit . . . or other separate local governmental entity that may sue and be sued." Ind. Code § 36-1-2-10. A "'[u]nit' means county, municipality, or township," Ind. Code § 36-1-2-23, and a "[m]unicipality" is a "city or town." Ind. Code § 36-1-2-11. Thus, the Indiana statutory scheme does not grant municipal police departments the capacity to sue or be sued. *See Martin v. Fort Wayne Police Dep't*, 2010 WL 4876728, at *3 (N.D.Ind. 2010).

5

*Sow v. Fortville Police Dept.*, 2011 WL 477050, *4 (7th Cir. 2011). That said, the claims against the IMPD and against the Officers in their official capacities are necessarily asserted against the City of Indianapolis and are understood as such. *Best v. City of Portland*, 554 F.3d 698, fn* (7th Cir. 2009).

The defendants assert that the City is entitled to Indiana statutory immunity under IND. CODE § 34-13-3-3(8) (formerly IND. CODE § 34-13-3-3(7), which provides:

> A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: . . . (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.").

The defendants' argument is misplaced and summary judgment is **denied** as to the claim under the ITCA. In 1993, the Indiana Supreme Court held that state law excessive force claims are not immunized by the scope of law enforcement immunity in the ITCA. *Kemezy v. Peters*, 622 N.E.2d 1296, 1297 (Ind. 1993) (law enforcement officers owe a private duty to refrain from using excessive force while making arrests, and therefore, excessive force is not immunized by the statute). This court has consistently found that *Kemezy* is still good law, *see Lessley v. City of Madison, Ind.*, 654 F. Supp.2d 877, 913 (S.D.Ind. 2009) (stating *Kemezy* holding is still good law); *McConnell v. McKillip*, 573 F.Supp.2d 1090, 1104 (S.D. Ind. 2008); *Turner v. Sheriff of Marion County*, 94 F.Supp.2d 966, 976 (S.D.Ind. 2000), as have others. *Wilson v. Isaacs,* 929 N.E.2d 200 (Ind. 2010); *Harness v. Schmitt*, 924 N.E.2d 162, 167 n.3 (Ind.Ct.App. 2010) (noting that Indiana Supreme Court has recognized exception to statutory immunity for use of excessive force).

The defendants next argue that Perry's state law claims fail because the plaintiff did not satisfy the notice provisions of the ITCA. IND. CODE § 34-13-3-10 provides:

> The notice required by sections 6, 8, and 9 of this chapter must describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice.

"It is well-established that notice is sufficient if it substantially complies with the content requirements of the statute. What constitutes substantial compliance, while not a question of fact, but one of law, is a fact-sensitive determination. Generally, a notice that is filed within the required time period, informs the municipality of the claimant's intent to make a claim, and contains sufficient information which reasonably affords the political subdivision with an opportunity to promptly investigate the claim will satisfy the purpose of the Act and will be held to substantially comply with the Act." *Boushehry v. City of Indianapolis*, 931 N.E.2d 892, 895 (Ind.Ct.App. 2010) (internal citations and quotations omitted).

Summary judgment on the basis that Perry failed to comply with the notice provisions of the ITCA is **denied** because the defendants have not provided sufficient evidence to establish that there are no material facts in dispute and that they are entitled to judgment as a matter of law. Specifically, the court could not identify the notice of tort claims referenced by the parties on the record.

2. Officers in their Individual Capacities

The ITCA limits when a plaintiff may sue a governmental employee personally. *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003). IND. CODE § 34-13-3-5(b) states in pertinent part: "A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:

(1) criminal;
(2) clearly outside the scope of the employee's employment;
(3) malicious;
(4) willful and wanton; or
(5) calculated to benefit the employee personally.

The complaint must contain a reasonable factual basis supporting the allegations. IND. CODE § 34-13-3-5(c). The purpose of the ITCA is to "ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Wilson v. Isaacs*, 917 N.E.2d 1251 (Ind. Ct. App. 2009), affirmed in part and vacated in part, *Wilson v. Isaacs*, 929 N.E.2d 200, 204 (Ind. 2010) ("As to plaintiff's claims against Deputy Craven personally, we summarily affirm the decision of the Court of Appeals") (internal quotations and citations omitted). When the employee's conduct is of the same general nature as that authorized or incidental to the conduct authorized, it is within the scope of employment. *Id.*

Perry's argument that the conduct alleged against the Officers constitutes criminal acts and thus the Officers are not immune from liability under the ITCA is not persuasive. "Courts have made clear that the ITCA goes so far as to protect officers from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business." *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1103 - 1104 (S.D.Ind. 2008) (citing *City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind.Ct.App. 1999) (citing *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993)). The Indiana Supreme Court has stated, "[a]n act is incidental to authorized conduct when it is subordinate to or pertinent to an act which the servant is employed to perform, . . . or when it is done to an appreciable extent, to further his employer's business." *Bushong v. Williamson*, 790 N.E.2d 467, 473 (Ind. 2003)(internal quotations and citations omitted). Consequently, "[e]ven criminal acts may be considered as being within the scope of employment if 'the criminal acts originated in activities so closely associated with the employment relationship as to fall

7

within its scope.'" *Id.* (quoting *Stropes v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989)); *see also Pinkney v. Thomas*, 583 F.Supp. 2d 970, 980 (N.D.Ind. 2008).

Here the Officers' actions were within the scope of their employment and there is no reasonable factual basis provided by Perry to conclude otherwise. *See Harness v. Schmitt*, 924 N.E.2d 162, 166 (Ind.Ct.App. 2010)(holding officer's presence to prevent any breach of peace was within the scope of officer's employment). The evidence shows that the Officers' conduct was of the same general nature as that authorized, or incidental to the conduct authorized, and thus it is within the scope of employment. The Officers arrived at Perry's home in response to a request from CPS and the conduct occurred as the children were being removed from Perry's home. Because the evidence shows that the Officers were acting within the scope of their employment, Perry's state law claims against the Officers in their individual capacities are barred by IND. CODE § 34-13-3-5(b) and the Officers are entitled to summary judgment as this claim.

### V. Conclusion

For the reasons explained above, the defendants' motion for summary judgment [41] is **granted in part and denied in part.**

As to Count I, the Fourth Amendment claim brought pursuant to § 1983 will proceed against the Officers in their individual capacities. The claim brought pursuant to the Fourteenth Amendment is **dismissed.**

As to Count II, the state law claims will proceed against the City of Indianapolis, mistakenly designated here as the IMPD. Summary judgment is **granted** in favor of the Officers on the state law claims.

**IT IS SO ORDERED.**

Date: 02/18/2011

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Beth Ann Dale
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
bdale@indygov.org

Andrew R. Duncan
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
ard@rucklaw.com

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jhaley@indy.gov

John F. Kautzman
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jfk@rucklaw.com

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Kenneth T. Roberts
ROBERTS & BISHOP
ktrjustice@aol.com

Tasha Rebecca Roberts
ROBERTS AND BISHOP
troberts@roberts-bishop.com

John C. Ruckelshaus
RUCKELSHAUS KAUTZMAN BLACKWELL BEMIS & HASBROOK
jcr@rucklaw.com